UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS JAMES ZAJAC<br><br>              Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>              Respondent. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:12-cv-355 CW<br><br>Judge Clark Waddoups |

## BACKGROUND

On December 16, 2015, the court issued a Memorandum Decision and Order denying Mr. Zajac's Motion to Vacate, Set Aside, or Correct Sentence ("2255 Motion"). Mr. Zajac now moves the court to reconsider its decision. The Tenth Circuit Court of Appeals has treated "a motion to reconsider filed more than ten days after judgment" as a Rule 60(b) equivalent. *Spitznas v. Boone*, 464 F.3d 1213, 1215 n.3 (10th Cir. 2006). The court therefore analyzes Mr. Zajac's motion to reconsider as a Rule 60(b) motion. For the reasons stated below, the court denies in part Mr. Zajac's motion and transfers to the Tenth Circuit Court of Appeals the remainder of the motion because the court concludes it is a second or successive 2255 petition.

## ANALYSIS

### I.  STANDARD OF REVIEW

This court lacks jurisdiction to consider a second or successive 2255 petition absent authorization from the Tenth Circuit Court of Appeals.  28 U.S.C. § 2255(h).  When a Rule 60(b) motion is filed, the court must determine whether the motion is a true Rule 60(b) motion or if it is a second or successive petition.  *Spitznas*, 464 F.3d at 1215.  When a motion "in substance or effect asserts or reasserts a federal basis for relief from the petitioner's underlying conviction," the motion is a second or successive motion.  *Id.* (citing *Gonzalez v. Crosby*, 545 U.S. 524, 538 (2005)).  For example, (1) "a motion seeking leave to present newly discovered evidence in order to advance the merits of a claim previously denied," or (2) "a motion seeking vindication of a habeas claim by challenging the habeas court's previous ruling on the merits of that claim" both constitute second or successive 2255 motions.  *Id.* at 1216 (quotations and citations omitted).

In contrast, when a motion "challenges only a procedural ruling of the habeas court which precluded a merits determination of the habeas application," it is a permissible Rule 60(b) motion.  *Id.* at 1216 (citing *Gonzalez*, 545 U.S. at 532 n.4).  Likewise, a motion challenging "a defect in the integrity of the federal habeas proceeding" is also permissible.  *Id.* (citation omitted).

### II.  ASSERTED GROUNDS FOR RELIEF

#### A.  Denial of a Second 2255 Hearing

Mr. Zajac asserts this court erred procedurally when it denied him an opportunity to present additional evidence at a second 2255 hearing.  He asked for the second hearing to provide "clarification of pivotal evidence."  Mot. to Reconsider, at 8 (Dkt. No. 108).  He contends the information would not have been new evidence, but merely clarifying evidence.

2

The court held a three-day evidentiary hearing on Mr. Zajac's 200-page 2255 Motion, which included a number of documents. Mr. Zajac then provided post-hearing briefing. Mr. Zajac was therefore afforded his procedural rights and nothing in the present motion shows the denial of a second hearing precluded a merits determination.

**B.      Kirk Lauterback as the Library Patron**

Mr. Zajac presents two new affidavits from his sisters indicating that the green-shirted man in the library videos is his step-son Kirk Lauterback. The court's memorandum decision addressed Mr. Zajac's assertion that he thought his defense team "intended to accuse his step-son of the crime." Mem. Dec., at 30 (Dkt. No. 105). Any new information about Mr. Lauterback falls within a second or successive 2255 petition, which may not be considered by this court absent authorization from the Tenth Circuit.

**C.      Electronic Versus Manual Ignition**

Mr. Zajac contends the court's analysis did not account for a manual ignition system rather than an electronic ignition system of the bomb. In a footnote, the court noted

> The Salt Lake City bomb did not have a model rocket motor. Also, it may have had a pyrotechnic fuse rather than a model rocket igniter. Thus, even though the cardstock was from packaging for a Estes model rocket motor and igniter, it is not clear that the cardstock had anything to do with the bomb components.

Mem. Dec., at 2 n.2.

Mr. Zajac contends this means the court concluded the bomb did not have an electronic ignitor or that it "acknowledged reasonable doubt that the Salt Lake City Library bomb detonated from an intact timing system." Mot. to Reconsider, at 18, 20 (Dkt. No. 108). He then argues this means the bomb had to be manually ignited, and because the blue-shirted man (who was identified as Mr. Zajac) had left the library fifteen minutes before the bomb exploded, he could not have been the bomber.

Mr. Zajac overstates the meaning of the footnote.  It is not clear if a model rocket igniter from the model rocket package was present.  What is clear is that the bomb had a timer and a battery, which strongly supports delayed, electronic ignition of the bomb.  Thus, contrary to Mr. Zajac's assertion, the court did *not* conclude reasonable doubt exists about whether an electronic ignitor was used on the library device.

To the extent Mr. Zajac's Motion presents other argument beyond the court's analysis, such new argument would fall within a second or successive 2255 petition.

### D.      Eye Witness Accounts

Mr. Zajac contends he raised the issue of Brenda Bell's testimony in his 2255 Motion, but the court did not address her eye witness account.  In its Memorandum Decision, the court stated that Mr. Zajac "expected his counsel to call witnesses to show it was not Mr. Zajac who sat in the relevant chair and planted the bomb."  Mem. Dec., at 30 (Dkt. No. 105).  The court did consider Ms. Bell's account in that respect, but did not mention her by name.  The court therefore addresses Mr. Zajac's specific contention here about Ms. Bell.

When Special Agent Mike Minichino interviewed Ms. Bell, his report states Ms. Bell "saw an unidentified male (UM), Hispanic or white, wearing a khaki colored jacket and baseball cap seated in the chair.  Bell recalled that the color of the UM's pants did not match the jacket."  Rpt. of Investigation, at Bates No. 141 (Dkt. No. 4, Part 2); *see also* Addendum, Attach. 1 (Dkt. No. 109).  The report further states, "Bell *estimated* that she saw the UM seated at *approximately* 1410 to 1415 hours."  *Id.* (emphasis added).

The blue-shirted man is seen entering the library at 2:12 p.m. and exiting at 2:19 p.m. Additional footage shows the blue-shirted man near the library's downstairs bathroom at 2:14

p.m.[1]  Because Ms. Bell saw a man seated in the chair from about 2:10 to 2:15 p.m., who does

not match the description of the blue-shirted man, Mr. Zajac contends this "eliminate[s] the

presence of the blue shirt, said to be the Movant, from having attended the crime scene."  Mot. to

Reconsider, at 25 (Dkt. No. 108).

An eye witness account that *estimates* when she saw a suspect and *approximates* it was

between 2:10 and 2:15 p.m. does not override the compelling evidence against Mr. Zajac.  It is

common for people to estimate, without precision, the time when an event occurred.  Mr. Zajac,

however, seeks to change Ms. Bell's estimate into a precise time to support his theory.

Insufficient evidence has been presented to do so.  Moreover, as stated above, the court

considered Ms. Bell's testimony when deciding Mr. Zajac's 2255 Motion.  It considered it in

conjunction with the other eye witness accounts, including that of Patricia Gallagher and Conrad

Olsen.  The court therefore expressly states that failing to present Ms. Bell's testimony, alone or

in conjunction with Mr. Olsen and Ms. Gallagher's testimony, did not prejudice Mr. Zajac in

light of the other compelling evidence.

### E.    Threat Letter Labels

Mr. Zajac next contends "the Court was deliberately misinformed by the government's

forensic expert" that the Dymo printer had ink indistinguishable from the ink found on the label

of the Hinsdale threat letter.  Although the court discussed the ink comparison, the court

---

[1]  Mr. Zajac contends the time stated by the court should be corrected by two minutes, such that
the suspect entered the library at 2:10 p.m. and exited at 2:17 p.m.  Mr. Zajac asserts this
correction is necessary because Special Agent Minichino testified during the evidentiary hearing
that the blast occurred at 2:32 p.m., so the time stamp on the video is off by 6 hours and 2
minutes.  Mot. to Reconsider, at 26-27 (Dkt. No. 108).  Mr. Zajac fails to mention, however, that
Special Agent Minichino testified it was at "*Approximately* 2:32."  Hr. Tr., at 126 (emphasis
added).  He then clarified, "Well, 2:32 I think is based on Salt Lake Dispatch records, and on the
video surveillance which it states here the people in the library observed flinching at 2:34."  Hr.
Tr., at 260 (Dkt. No. 63).  This testimony shows the difficulty of pinpointing precise times for
the events at issue.

ultimately concluded that all 404(b) evidence from the Hinsdale bomb would have been excluded had it been aware of certain facts. Therefore, the purported match between the printer ribbon ink and the ink on the label of the Hinsdale threat letter was not relied upon by the court when it concluded that compelling evidence still remained to support Mr. Zajac's conviction.

Moreover, the government did not deliberately misinform the court about the ink during the 2255 proceeding. Rather, Mr. Zajac presented the Secret Service Lab Report to the court from which the information was derived. To the extent Mr. Zajac contends the fraud occurred in the underlying case when the report was first drafted, that issue and Mr. Zajac's new supporting evidence constitutes a second or successive 2255 petition. *See Spitznas*, 464 F.3d at 1216 (stating fraud originating in the underlying criminal case may not be raised through a Rule 60(b) motion because it is a second or successive petition).

### F.      Alliant Blue Dot Powder

Mr. Zajac asserted in his 2255 petition that the government improperly represented that Alliant Blue Dot powder was found in different locations in his home. The court agreed because no blue discs were located in Mr. Zajac's apartment. The court further noted that one blue disc was found in a shop vac in Mr. Zajac's storage unit, and that no testing was done on it due to its small quantity.

Mr. Zajac now contends the government deceived the jury and the court because more than one blue disc was found in the shop vac. Thus, he contends the government lied about the quantity at trial and it was unreasonable not to test the discs to determine their actual make-up. This argument does not change the compelling evidence against Mr. Zajac on which the court relied. Moreover, this argument also asserts that a species of fraud occurred in the underlying criminal case. Thus, it may not be raised through a Rule 60(b) motion because it is a second or

successive petition.

## III.    CERTIFICATE OF APPEALABILITY

The court certified its previous memorandum decision for appeal.  In that decision, the court addressed eye witness accounts, but did not name Brenda Bell by name.  Because this decision does identify Brenda Bell by name and discusses her specific statements, the court concludes it is appropriate to certify that issue for appeal as well.

To the extent the other matters raised by Mr. Zajac fall within this court's jurisdiction under a Rule 60(b) motion, the court concludes they fail to meet the standard for a certificate of appealability.  The court therefore does not certify them for appeal.

## IV.    TRANSFER OF SECOND OR SUCCESSIVE PETITION

The Tenth Circuit has specified when "a motion contain[s] both true Rule 60(b) allegations and second or successive habeas claims," the court should address "the true Rule 60(b) allegations" and "forward the second or successive claims to [the Tenth Circuit] for authorization." *Spitznas*, 464 F.3d at 1217.  Mr. Zajac has presented new evidence regarding Kirk Lauterback and the Dymo Printer.  He has presented new argument about (1) the complete absence of an electronic igniter, (2) alleged fraud on the court regarding ink testing, and (3) alleged fraud on the jury and court regarding the amount of blue discs found in his shop vac and why those discs were not tested.  Because the court concludes the new evidence and new arguments constitute a second or successive petition, the court transfers those sections of the Motion to Reconsider to the Tenth Circuit.

## CONCLUSION

For the reasons stated above, the court DENIES IN PART Mr. Zajac's Motion to Reconsider.  Dkt. No. 108.  It CERTIFIES FOR APPEAL Mr. Zajac's contention that Brenda

Bell's statements, in conjunction with other eye witness accounts, shows he suffered prejudice when his defense counsel did not present her testimony. The remainder of the Motion addressing new evidence and new argument is TRANSFERRED to the Tenth Circuit as a second or successive 2255 petition.

DATED this 19th day of January, 2016.

BY THE COURT:

Clark Waddoups
United States District Judge